IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Corey Haugen, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:04-cv-0146 |
| vs. | ) | |
| | ) | **Memorandum Opinion Granting** |
| Heitkamp Construction, Inc., | ) | **Defendant's Motion for Summary** |
| | ) | **Judgment.** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

This is an action in diversity for injuries Plaintiff Corey Haugen suffered while working at

the Minn-Dak Farmers Cooperative sugar refinery factory in Wahpeton, North Dakota on

February 6, 2003.  Defendant Heitkamp Construction, Inc. seeks summary judgment contending

that since it made the door installation in February of 1990 the claim is barred by the North

Dakota statue of repose for an improvement to real property.  Heitkamp Construction further

argues that the injuries were caused by the intentional by-pass of the automatic safety feature of

the control switch either by Haugen or a third party which constitute material alterations the door

system.  Haugen counters that Heitkamp construction is not within the protected class of the

statute of repose, that  the door and the motor do not constitute an improvement to real property

and that a fact question exists as to whether Haugen's injuries were Heitkamp Construction's

fault.

**Summary of Decision**

The Court finds the installation of the door in 1990 constitutes an improvement to real

property.  The operation of the North Dakota statute of repose in Section 28-01-44 of the North

Dakota Century Code bars Haugen's claim for injuries arising in 2003.  Further because

Haugen's injury was caused by the subsequent intentional zip-tie by-pass of the safety switch by Haugen or some other third party, Heitkamp Construction had no duty to design and build the door in anticipation of the unsafe alteration.  The Court thus grants summary judgment in favor of Defendant.

### Statement of Facts

Plaintiff, Cory Haugen is a resident of Minnesota. Docket 29 ppg 1, Docket 30.2  p. 12. Defendant Heitkamp Construction is a North Dakota corporation with its principal place of business in North Dakota. Docket 29 ppg. 2,  Docket 1 pp. 2, Docket 5, pp. II and Docket p. 30.3 p. 16.  In January and February of 1990 Heitkamp Construction constructed and installed two overhead bi-fold doors at the sugar loading building at the Minn-Dak plant in Wahpeton, North Dakota.  Docket 29 ppg. 5, Docket 30.2 at p. 31-32.  One set of bi-fold doors was installed at the east entrance to the factory. Docket 29, ppg 8-9, .Docket 30.2 p.25-26, Docket 30.8. These were the first bi-fold doors of this type installed by Heitkamp Construction. Docket 29, ppg. 6, Docket 31 ppg. 7.  Heitkamp Construction has provided other construction services to Min-Dak Farmers Cooperative and such work constitutes approximately seventy percent of Heitkamp Construction's work. Docket 29, ppg. 3, Docket 31 ppg. 2.

The door in question replaced an existing roll-up door with the bi-fold door so as to better withstand the wind.  Docket 31, ppg. 7.  The door was fabricated, constructed and installed in a one week period and Heitkamp Construction did not install the electrical work or control switch section.  Docket 31, ppg 8.  Heitkamp purchased the components for the door including the steel cable and electric motor on the door. Docket 29 ppg. 6, Docket 31, ppg. 9.  It was a unique project, built on site and affixed to the walls of the factory at Minn-Dak. Docket 31, ppg 11-12.

2

When completed the door was wired by electricians from Minn-Dak so the operator would have to hold the control switch while the door was operated. Docket 29 ppg 9, Docket 31, pg 18.  For unknown reasons Minn-Dak employees used a toggle switch to control the door rather than the push button switch supplied by Heitkamp Construction.  Docket 29 pg. 12. Heitkamp Construction had no further involvement with the subject electric motor, cable and spool.  Docket 29 pg. 18.

Haugen reported for work late on the night of February 5. Docket 29 ppg 32.  There is a factual dispute regarding who opened the door in question shortly after midnight on February 6, 2003. Docket 29 ppg 40-42.  Regardless Haugen's right hand got caught at the location where the cable to the rising overhead door meets the spool. Docket 29 pg 45.  Though it is disputed as to who attached it, a zip-tie was holding the switch controlling the door in an up position. Docket 29 pg 49.  In his Plaintiff Statement of Additional Undisputed Facts in Opposition To Defendant's Motion for Summary Judgment, Haugen states that the door was fabricated at Heitcamp Constructions's shop and hauled out to Minn-Dak in 1997 and 1998.  There is no citation to the record supporting this date and the court can only conclude that the statement is in error since Haugen does not anywhere argue that the statute of repose has not run but only argues that the repose statute does not protect Heitkamp Construction.  Were the injury to have occurred only nine years after installation the court assumes that that fact would have been central and that Plaintiff would have pointed out that such a dispute as to the date exits.

Thus it appears to the court that the door was designed constructed and installed by Heitkamp Construction in 1990 and affixed to the Minn-Dak sugar factory building.  Haugen was injured thirteen later when his hand was caught in the spool of the door opening mechanism,

the safety mechanism feature which had been by-passed by someone other than Heitkamp

sometime after construction was completed by the use of a zip tie.

**Analysis**

This is an action in diversity.  Complete diversity exists.  Plaintiff, Cory Haugen, is a

Minnesota resident.  Defendant, Heitkamp Construction, Inc, is a North Dakota Corporation with

its principal place of business in North Dakota.  Plaintiff alleges personal injuries in excess of

$75000. Docket 1.  In a diversity action for personal injury the court applies the state law of the

forum state. Engleson v. Little Falls Area Chamber, 362 F3d 525,528 (8ᵗʰ Cir 2004).  Here the

injury occurred in North Dakota and Haugen brought this action in North Dakota.

The standard for granting summary judgment is well-established.  Rule 56 provides that

summary judgment is appropriate if the record contains "no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56.  See also

Lawerence v. Roberdeau, 665 N.W.2d 719, 722 (N.D. 2003).  Applying this standard, the district

court's function at the summary judgment stage of the proceedings is not to weigh the evidence

and determine the truth of the matter, but to determine whether there are genuine issues for trial.

Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376-77 (8th Cir. 1996).  Thus, a court considering

a motion for summary judgment must view all the facts in the light most favorable to the

nonmoving party, and give the nonmoving party the benefit of all reasonable inferences that can

be drawn from the facts.  Id.  "An issue of material fact is genuine if it has a real basis in the

record."  Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  "A genuine issue of fact is

material if it 'might affect the outcome of the suit under the governing law.'"  Id. (quoting

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

        In North Dakota a certain class of defendants is protected by a statute of repose for injury claims arising after the repose period due to improvements to real property.  NDCC Section 28-01-44 provides in part:

> 1.    No action, whether in contract, oral or written, in tort or otherwise,  to recover damages:
>> a.  For any deficiency in the design, planning or supervision, or observation of construction or construction of an improvement to real property;
>> b. For injury to property, real or personal, arising out of such deficiency; or
>> c. For injury to the person or wrongful death arising out of any such deficiency,
> may be brought against any person performing or furnishing the design, planning, supervision or observation of construction, or construction of such improvement more than ten years after substantial completion of construction of such an improvement.

"A statute of repose period begins to run from the occurrence of some event other than the event of the an injury that gives rise to the a cause of action and, therefore bars a cause of action before the injury occurs." Dickie v. Farmers Union Oil Co., 611 N.W. 2d 168, 170 (N.D. 2000).  As that court observed a statue of repose leaves a person injured after the statutory period without a remedy.  Id.  In Dickie the North Dakota Supreme Court found that such a statute is unconstitutional in the context of suppliers or manufacturers of products and reiterated its holding that a previously substantively identical statute of repose, in the context of a products liability action, was unconstitutional and again struck down the statute of repose protecting manufacturers and suppliers of products. Id. citing Hanson v. Williams County, 389 N.W.2d 319,328 (N.D. 1986).

        The Dickie Court however distinguished the separate statute relied on by Heitkamp

Construction.  The court noted that the statute of repose limiting personal injury actions arising out of deficient improvements to real property recognizes a crucial distinction between defendants involved in the planning, design and improvement to real property and the classification of defendants who manufacture and supply defective products.  Id. at 172.  As the court noted differences exist between the different classes of potential defendants.  Id.  Architects, contractors, engineers and inspectors do not have control after initial construction while materialmen provide manufactured goods and like manufacturers,  components produced in large quantities are standard goods subject to standard processes allowing the maintenance of control standards in a factory environment. An architect or contractor can pre-test and standardize to a much lesser extent. Id.  The court relied on its previous decision upholding the statute of repose for a contractor who had constructed a grain bin in 1967.  Bellemare v. Gateway Builders, 420 N.W. 2d 733 (N.D. 1988).  That plaintiff fell from a ladder attached to a grain bin some twelve years after construction was completed. Id at 734.

Dickie was a certified question from this court arising from serious burn injuries to a farm employee from an explosion attributed to a gas leak from an underground pipe which connected LP gas tanks to a grain drying system. Id. at 169.  Defendant had sold and delivered black iron pipe to the farm and installed the pipe connecting the gas tank to the grain dryer in 1975.  The pipe was not protected against corrosion resulting in a leak and explosion in 1998.  The North Dakota Supreme Court found that case not controlled by Bellemare.  Though not fully explained by the court the only reason Bellemare is distinguishable is that the defendant in Dickie was both a contractor, who would presumably be protected by the NDCC 28-01-44 and a supplier of defective pipe who would not be so protected.  Thus this court believes that the Dickie defendant

6

was not protected by the repose statute because it supplied the defective leaking pipe, but the

contractor would have been protected had it been only a contractor who had constructed and

designed the installation in a faulty manner.   This interpretation is consistent with other decisions

of the North Dakota Supreme Court.

      In <u>Vantage v. Carrier Corporation,</u> plaintiff leased a building damaged by a fire caused by

a rooftop furnace built by defendant.  467 N.W.2d  446, 447 (N.D. 1991).  Defendant sought

summary judgment because the furnace had been installed in 1974 twelve years before the 1986

fire.  <u>Id.</u>  The court held that the statute of repose for improvements to real estate did not protect

Carrier. <u>Id.</u>  Defendant manufactured the rooftop furnace as an assembly line product.  <u>Id.</u> at 450.

Carrier, the furnace manufacturer, was not involved in the furnishing the design, supervision or

construction of an improvement to real property.  <u>Id.</u>  Because the furnace manufacturer can

supply and produce components in large quantities, make standard goods and develop standard

processes the manufacturer and supplier can maintain high quality control standards in the

controlled environment of a factory and thus should be held accountable under general tort

liability for defective products.  <u>Id.</u> at 450.  A contractor or architect, the court reasoned, can

pretest or standardize construction plans and designs in a more limited fashion.

      This was the same result an the same reasoning in <u>Blikre v. ACANDS,</u> 593 N.W. 2d 775

(N.D. 1999).  There various manufacturers and installers of asbestos containing products were

sued by nine plaintiffs seeking damages for personal injury caused by asbestos exposure at

various job sites.  <u>Id.</u>  at 777.  The court stated that "the clear language of the statute does not

apply to a manufacturer of building materials used in an improvement to real property.  <u>Id.</u> at 778.

The legislation was intend to protect those engaged in the design, planning and construction of

improvements to real property, not suppliers of dangerous component parts of construction projects. Id.

     This reasoning was followed in another North Dakota case.  Sime v. Tvenge Associates Architects, 488 N.W. 2d 606 (N.D. 1992).  Sime was an action against an architect and engineer for the negligent design of a ventilation system which caused injuries to plaintiff from carbon monoxide poisoning.  Id. at 607.  After first concluding that claims against architects and engineers were governed by a two year statute for professional malpractice, rather than the usual six year statute for negligence, the court upheld the refusal of the trial court to allow the plaintiffs to amend their claim to add a claim in products liability.  Id. at 611.  The court noted that a distinction exists between architects and engineers on the one hand and manufacturers on the other.  Id.  The design of the ventilation system was unique to the particular setting and not a standardized or mass marketed product.  Id.

     Haugen contends that Heitkamp Construction is a "manufacturer" of the door in question. Heitkamp Construction concedes that it fabricated the door.  Docket 29 ppg. 5.  It was however built specially for the installation and was unlike any other door it had previously made or installed. Docket 29 ppg. 8.  It lacked the standardization in the assembly and manufacturing of products.  If Heitkamp Construction produced many assembly line doors for installation the case would be different  Here however Heitkamp Construction was in the construction business not a supplier of door systems.  If Haugen is correct virtually every contractor would loose the protection under the statute any time he builds anything.  Only architects and engineers would receive the benefit of the statute. That is contrary to a reading of the North Dakota cases. This court believes the correct interpretation is that a contractor that furnishes a defective product does

not receive the protection of the statute of repose.  If however the component pieces are all free from defects a contractor who designs a plan and installs those components in an improvement to real estate, is protected against a claim for an injury that arises more than ten years after the construction. Haugen argues that a defendant can it be said to be making an improvement to real property only if he designs, builds or inspects a new improvement to real property.  The repair or adding of a product does not, plaintiff reasons, provide protection to a defendant.  This goes too far. The test is "improvment to real property". NDCC § 28-01-44 (1)(a).  While defendant is correct that there is no definition in the statute and the North Dakota Supreme Court has thus far declined the invitation to define an "improvement to real estate" the <u>Bellemare</u>, the court did note that words in a statute should be understood in their ordinary sense.  <u>Id.</u> The court also noted that the dictionary definition of an improvement is a change or addition to land or real property to make it more valuable.  <u>Id.</u> at 736. The court went on to find that a 10,000 bushel grain bin anchored to a cement slab by bolts fit within the statute. <u>Id.</u>

This is consistent with case law from other jurisdictions.  For example a garage door opener was an improvement to real property where it was permanently affixed to the home, was installed the expenditure of labor and money and was designed to make the house more useful and valuable. <u>Henry v. Raynor Manufacturing Company,</u> 753 F. Supp 278, 281 (D. Minn. 1990) (Interpreting Minnesota law).   This court believes that installation of the new doors enhanced Min-Dak's property by replacing the old roll up doors.  Changes to existing construction are as likely to increase the value and utility of property as is new construction.  Thus Haugen's analysis is too limited and the court concludes that protecting new construction but not remodeling or retrofitting, is a strained construction of the statute.

Even assuming the "door system" installation constitutes a product the court believes that the alteration of the operation switch by the addition of the zip-tie by either plaintiff or some other third party also defeats plaintiffs claim.  North Dakota recognizes that negligence and strict liability are separate theories of products liability.  <u>Oanes v. Westgo, Inc.,</u> 476 N.W. 2d 248, 253 (N.D.).  Strict liability in tort focuses on whether the product is defective and unreasonably dangerous while a negligence theory focuses on whether the manufacturer's conduct falls below the standard of reasonable care.  <u>Crowston v. Goodyear Tire and Rubber Co.,</u> 521 N.W.2d 401, 406 (N.D. 1994). Under both theories liability may be imposed because of inadequate warnings. <u>Id.</u>  Haugen alleges strict liability, negligence and breach of express and implied warranties. Docket 1.

In North Dakota, since 1993,  the alteration of a product after the completion of manufacturing is a defense to a claim.  NDCC § 28-01.3-03 provides:

> No manufacturer or seller of a product may be held liable in any products liability action in which a substantial contributing cause of the injury, death, or damage to property was an alteration or modification of the product, which  occurred subsequent to the sale by the manufacturer or seller to the initial user or consumer, and which changed the purpose, use, function, design, or intended use or manner of use of the product from that for which the product was originally designed, tested or intended.

However, the North Dakota Supreme Court has held that Section 28-01.1-04, the substantively similar statute that governed post manufacture alterations prior to 1993, makes a manufacturer or seller liable for alterations or modifications that are foreseeable, regardless of whether the change is intentional or accidental. <u>Oanes v. Westgo, Inc.,</u> 476N.W. 2d 248, 252  (N.D. 1991).  The court believes the North Dakota Supreme Court would apply the same analysis to the current statute. Put another way, a manufacturer has a duty to protect consumers against the foreseeable misuse

of its products.  Johnson v. American Motors Corp., 225 N.W. 2d 57 (N.D. 1974).  The North

Dakota Supreme Court reasoned that, in the context of the products liability act, a claim for the

manufacturer's negligent failure to warn the subsequent alteration or modification of a product by

someone other than the original manufacturer is not an absolute defense to the claim.  Crowston

v. Goodyear Tire and Rubber Co., 521 N.W. 2d 401, 407 (N.D. 1994) citing, Witthauer v.

Burkhart Roentgen, Inc., 467 N.W.2d 439 (N.D. 1991).   Thus a foreseeable alteration or

modification to a product may give rise to liability even when the alteration is done by some third

party.

   In Witthauer a child was injured when the child was burned by a high intensity lamp. Id.at

440.  The lamp had been damaged and subsequently modified by the clinic co-defendant when it

removed a heat protection filter from the unit.  Id. at 444.   As the court noted the use of the unit

without the shield was not obviously dangerous and thus the statute did not provide a defense. Id.,

at 445.

   However if the ordinary user would understand that the alteration is dangerous the

manufacturer owes no duty to warn.  Westchem Agricultural Chemicals v. Ford Motor Co., 990

F2d 426,431 (8th Cir. 1993).  There the court, interpreting North Dakota law in the context of a

failure to warn, held that when the consumer had altered the wiring system on a pickup by the

installation of a wiring lead to the trailering pigtail on the truck.  In the resulting fire the truck and

a warehouse were destroyed.  The court concluded that the manufacturer had provided a safe

product and had no duty to anticipate improper installation of the dome light which defeated the

negligence claim.  Id. at 426.  Similarly  the truck was safe for its intended use prior to the

installation of the dome light, thus preventing the strict liability claim as well. Id.  Finally the

11

court reasoned that a manufacturer does not owe an automatic duty to warn when the danger presented is obvious. Id.  The pickup in question was safe before the topper dome light was connected.  A reasonable consumer would not have attempted to alter the electrical system without consulting a professional. Id. At 432.

It is disputed whether Haugen or another Minn-Dak employee placed the zip tie on the switch.  Each blames the other.  Docket 29 ppg 40,42,47.  However no one has alleged that the zip tie was in place when Heitkamp Construction completed construction of the doors.  Thus the "product" was safe when construction was completed.  It is undisputed that the accident could not have happened had the switch not been tied. Docket 29 ppg 57.  Thus there was a change in the "product" after the installation by Heitkamp Construction.  Heitkamp Construction supplied a toggle type switch for operation of the door which would have required a continuous hold to operate the door.. Docket 29, ppg 10, 11.  Heitkamp Construction did not do the electrical work on the door and did not install the door control Switch.  Docket 29 ppg. 10.  Minn-Dak's employees instead installed a push button switch which required continuous pressure to operate the door. Docket 29, ppg. 13.  This switch was subsequently zip-tied by either plaintiff of some third party.  Docket 29 ppg 40,42,47.  This change in switch type and the subsequent defeat of the switch safety mechanism constitutes an alteration to the "product".  It is an alteration which is obviously dangerous and not foreseeable by Heitkamp Construction.

This is similar to the situation where the plaintiff removed the battery from a smoke detector.  Morrison v Grand Forks Housing Authority, 436 N.W.2d 221,223 N.D.1989). A battery powered smoke detector is not defective where the battery has been removed and the detector no longer works.  Id. at 224. In order to recover under the doctrine of strict liability a plaintiff must

prove a defect in the product.  Id. at 223.  A battery powered smoke detector is not unreasonably

dangerous when it fails to operate following the removal of the battery.  Id. At 224.  A

manufacturer is not liable for negligence when it fails to warn or in strict liability for supplying an

unsafe product due to the absence of a warning,  if the danger or potential danger is obvious or

known to the injured person.  Id.

Thus the door "system" is not defective where it was constructed without a warning that

the safety switch should not be bypassed since that danger was obvious.  There is no negligence

on the part of Heitkamp Construction for failing to foresee that Minn-Dak would install a

different type of safety switch which was more susceptible to an intentional bypass by the door

user through the use of a zip tie.  For these reasons the court believes Heitkamp Construction

should prevail as a matter of law.

**Conclusion**

The Court hereby **GRANTS** Defendant's Motion for Summary Judgment .

**IT IS SO ORDERED**.

Dated this 3rd day of November, 2006.

/s/ Ralph R. Erickson

_____

Ralph R. Erickson
District Judge